UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RENEE RICHARDSON,

    Plaintiff,

v.                                                  No. 5:18-cv-00151-JKP

THE MEDICAL TEAM, INC. d/b/a
THE MED TEAM, INC.

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant's Motion for Summary Judgment (ECF No. 26). Plaintiff filed an opposition to said motion, and Defendant filed a reply thereto. (ECF Nos. 29, 30). After careful consideration of the arguments and evidence of the parties, the Court GRANTS Defendant's motion.

**I. Background**

In this employment discrimination action, Plaintiff Renee Richardson ("Richardson") brings causes of action for discrimination and retaliation against her former employer, Defendant The Medical Team, Inc. (the "Med Team"). In her Complaint, Richardson asserts the Med Team violated Title VII of the Civil Rights Act and the Texas Labor Code § 21.051, *et seq.* when it retaliated against her by terminating her employment after she complained of race discrimination. ECF No. 1. The Med Team moves for summary judgment contending Richardson has failed to establish a prima facie case of retaliation and there is no admissible evidence from which a trier of fact could reasonably conclude discrimination was the basis of her termination. ECF No. 26 at 3.

**II. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] A dispute is "genuine" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249. A dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Id*. 477 U.S. at 248. While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party has the burden to "demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law" to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982). Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 (stating that "a scintilla of

---

[1] Effective December 1, 2010, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and there was one word change from previous versions—"genuine issue" became "genuine dispute," but the standard for granting summary judgment remains unchanged. Fed. R. Civ. P. 56. Notes of Advisory Committee on 2010 amendments. Accordingly, this Court uses the term "dispute" noting, however, much of the caselaw uses "genuine dispute" and "genuine issue" interchangeably.

evidence" is insufficient). Rather, the nonmoving party must identify specific facts that show a genuine dispute for trial. *Matsushita*, 475 U.S. at 587. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A district court's decision on summary judgment is largely controlled by what the parties presented. If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations omitted).

**III. Discussion**

Richardson's Complaint alleges the following. Richardson sent an email complaining of race discrimination to a Med Team Human Resources Representative on January 20, 2017, and was terminated on January 27, 2017. ECF No. 1. at 5-6. The Med Team informed her the reason for her termination was, "we are not performing; we have goals that have not been met." *Id*. at 6. Richardson's performance was not poor according to her "numbers" and in comparison "to other [Med Team] branches." *Id*. Thus, Richardson's termination was not due to the decline of the census. Rather, the Med Team terminated her based on her race and because she complained of race discrimination. *Id*. at 7.

It is undisputed Richardson was hired by the Med Team in March, 2015, and promoted to Branch Manager four months later. *Id*. at 3; ECF No. 26 at 4-5. The Med Team's job description

3

provided, *inter alia*, a branch manager was responsible for "manag[ing] operations of the branch in accordance with established fiscal parameters;" it did not expressly name the patient census in describing the essential functions of the job. ECF No. 26-4 at 3. On the last performance review before her termination, signed April 13, 2016, Richardson received ratings of three or four out of five under headings that included initiative, teamwork and cooperation, quality of work, quantity of work, job knowledge, professionalism, personal qualities, and supervision, among others. ECF No. 26-7 at 3. In the self-assessment section, Richardson included a goal to increase the New Braunfels patient census by thirty to fifty patients by April 1, 2017. *Id.* at 4; ECF No. 26-6 at 3. Richardson was terminated on January 27, 2017. ECF Nos. 1 at 6; 26 at 8.

The Med Team moves for summary judgment contending (1) Richardson fails to present sufficient evidence that the Med Team's reason for discharging her was pretextual; (2) Richardson fails to establish a prima facie case of retaliation; and (3) Richardson fails to produce evidence sufficient to rebut the Med Team's legitimate non-retaliatory reason for her termination. ECF No. 26 at 14-19.

**A. *McDonnell Douglas* framework**

Title VII of the Civil Rights Act of 1964 makes it unlawful for a covered employer to "discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). An employer's conduct is unlawful if the employee can demonstrate the proffered reason for her termination was pretext for race discrimination or her race was "a motivating factor" for her firing, even if the employer was also motivated by other lawful factors. 42 U.S.C. §§ 2000e-2(a)(1); 2(m).

Title VII race discrimination and retaliation causes of action based on circumstantial evidence are examined under the *McDonnell Douglas* burden-shifting framework. *See Stroy v.*

*Gibson*, 896 F.3d 693, 698 (5th Cir. 2018)*; Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001) (stating "the Supreme Court has allocated the burden of production in Title VII cases"); *compare Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (stating the *McDonnell Douglas* framework does not apply where a plaintiff is able to support the elements of her claim with direct evidence).

The *McDonnell Douglas* framework requires Richardson to first make a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once Richardson establishes a prima facie case, the Med Team must articulate a legitimate reason for firing Richardson. *Id*. If the Med Team provides a legitimate reason, Richardson must then rebut that reason with "sufficient evidence to create a genuine [dispute] of material fact either (1) that [the Med Team's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [the Med Team's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Richardson's] protected characteristic (mixed-motives alternative)." *Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks and citation omitted).

**1. Discrimination Claim**

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell*, 411 U.S. at 802. The Fifth Circuit also applies the *McDonnell Douglas* framework at summary judgment. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing *Rachid*, 376 F.3d at 312). To make a prima facie case of discrimination, Richardson must establish (1) she is a member of a protected class, (2) she was qualified to be the New Braunfels Branch Manager, (3) she was fired, and (4) she was replaced by someone outside of her protected class or others similarly situated were

5

treated more favorably. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000). Richardson's prima facie case fails because she fails to establish she was replaced by someone outside her class, or that other similarly situated Med Team employees were treated more favorably.

Richardson's Complaint does not allege she was replaced. Richardson's response to the Motion does not dispute Ryan Grisard's ("Grisard"), the Med Team's Chief Financial Officer, testimony that after she was terminated, "the Med Team distributed her job duties among existing employees" and, it was "approximately two (2) years after Plaintiff's termination before the Med Team hired a branch manager for the New Braunfels branch." *See* ECF Nos. 1; 26 at 10; 29.

To establish that similarly situated Med Team employees were treated more favorably, Richardson contends "[s]he was the only one disciplined in any capacity for census and 4 others outside of her class were not disciplined for their lowered census numbers." ECF No. 29 at 17. Richardson asserts she is the "only branch manager that has ever been terminated for low census." ECF No. 29 at 18. However, Richardson identifies Lacie Richter as a branch manager comparator. *See* ECF No. 1 at 6. Lacie Richter was terminated on January 31, 2017, for poor work performance due to the continuous decline of the patient census numbers for the Austin office. *See* ECF Nos. 26-9 at 2-3; 1 at ¶ 25 (where Richardson identifies Richter as a branch manager). Ms. Richter's personnel action form notes in the "additional termination details" box: "Poor performance. Census continued to decline." ECF No. 26-9 at 3. With respect to Richter's termination, Grisard testified the Med Team "has no record or reason to believe that Ms. Richter made any complaints of discrimination, harassment or retaliation prior to her termination." ECF Nos. 28-1 at 5; 30 at 10. Grisard also testified Richter was not a branch manager but an

administrator, stating, "administrators and branch managers have some overlapping job responsibilities, such as the responsibility for managing the patient census for his or her assigned office or branch." *See* ECF Nos. 26-2 at 6; 26-10 at 4; 26-11 at 4; 26-14 at 7. This testimony notwithstanding, in her response, Richardson re-asserts only: "It has been established that Plaintiff was treated differently than other branch managers in discipline and that employees at her branch that were also responsible for census were not disciplined in any capacity." ECF No. 29 at 18-19.

In support of her position, Richardson proffers four additional comparators who she asserts were not terminated for declining census: "Kamla Behanylal, who is listed by the EEOC documentation as 'Other than black'; Eileen Gregory, white; Christine Luna, Hispanic; and Christina Hernandez-Ayala, Hispanic." ECF No. 1 at 6. Richardson also states the "branches in San Antonio, Dallas, Mercedes, Brownsville, and Austin were all underperforming according to the same metrics used to evaluate the New Braunfels branch." *Id*.

To be deemed similarly situated, the employees proffered as comparators should "h[o]ld the same job or responsibilities, share[ ] the same supervisor or ha[ve] their employment status determined by the same person and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted). Additionally, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (citation omitted). Hence, the rate of census decline among the Med Team employees proffered as comparators, must be nearly identical to the rate of decline of the census for which Richardson was responsible. *See Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 244-45 (5th Cir. 2019) (discussing the kinds of facts that have demonstrated that a "plaintiff's termination was taken

7

'under nearly identical circumstances' as those faced by the comparator").

Richardson describes her comparator's performance in broad, undefined terms such as "underperforming," "the same metrics," and "declining census" but she provides no data to support her contentions that "her performance was not poor when compared to other branches of Defendant;" "[t]he branches in San Antonio, Dallas, Mercedes, Brownsville, and Austin were all underperforming according to the same metrics used to evaluate the New Braunfels branch;" and others outside of her class were not disciplined in any way for their lowered census numbers. ECF Nos. 1 at 6-7; 29 at 2, 17-19. In other words, Richardson provides no evidence from which the Court could compare her performance to her comparators' performance and determine whether Richardson was treated differently from these "similarly situated" employees.

The Med Team's summary judgment evidence includes a table, which illustrates the steady, month-on-month decline of the New Braunfels patient census from 322 in July 2015 to 244 in January 2017. ECF No. 26-2 at 4-5. The table shows during Richardson's tenure as Branch Manager, the New Braunfels patient census declined by seventy-eight patients. *Id*. The Med Team's undisputed testimony is it fired Richardson due to that decline. Consequently, an employee similarly situated to Richardson would hold the same job or responsibilities, share the same supervisor or had their employment status determined by the same person, have essentially comparable performance histories, and Richardson's conduct—here, a decline of seventy-eight patients over eighteen months—would be "'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260. Med Team Vice President Nick Tzirimis ("Tzirimis") testified the three executives who made the decision to terminate Richardson also made the decision to terminate Richter and Lourdes Barton, Hispanic, who was terminated in September 2016 for declining census. ECF Nos. 26-8; 26-10 at 4-5.

Richardson points to no other evidence to establish that her proffered comparators shared the same supervisor or had their employment status determined by the same person; had essentially comparable performance histories; and, importantly, Richardson fails to show any comparator had a nearly identical declining census as demonstrated by some comparable data.

To the extent Richardson's contention that "Rea Cazares, whose job responsibilities included marketing directly related to increasing the census" and Alan Garza, Divisional Operations Manager, were not terminated for declining census numbers is intended to support Richardson's prima facie case; the argument is unavailing. Richardson's evidence shows these two employees had vastly different work responsibilities from Richardson. Consequently, they are not similarly situated to her. *See* ECF Nos. 1 at 3; 29 at 6. *See also Lee*, 574 F.3d at 260.

The summary judgment evidence presented cannot establish a prima facie case as a matter of law because Richardson does not establish that any similarly situated employee was treated more favorably. Thus, Richardson has not raised a genuine issue of fact with respect to her prima facie case.

**2. Retaliation**

"A plaintiff establishes a prima facie case of retaliation by showing (i) [s]he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link[2] between the protected activity and the adverse employment action." *Hernandez*, 670 F.3d at 657. "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to

---

[2] *Garcia v. Prof'l Contract Servs.* was filed on September 11, 2019. Accordingly, the Court follows the *Garcia* precedent, which confirms that "causal connection" is the standard at the prima facie stage and "but-for" causation is the standard at the pretext stage. 938 F.3d at 241-243. *Compare Harville*, filed August 16, 2019: "To establish a prima facie case of retaliation under Title VII, Harville must show that (1) she engaged in a Title VII protected activity; (2) she was subject to an adverse employment action; and (3) there was a but-for causal connection between her employment in the protected activity and the adverse employment action. *Harville v. City of Hous.*, 935 F.3d 404, 414 (5th Cir. 2019).

terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). A plaintiff must "produce at least some evidence" the defendant "had knowledge of the protected activity" at the prima facie stage. *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883, n.6 (5th Cir. 2003). "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Id*.

To establish her prima facie case, Richardson testified she emailed Human Resources Representative Sarah Gogo ("Gogo") on January 20, 2017, complaining of race discrimination writing—"I have always felt like Alan has never supported me or respected me in this position because I am a black woman"—and she was fired on January 27, 2017. ECF No. 26-15 at 13. Richardson contends the close temporal proximity between her protected activity and her termination is sufficient to establish the causal link required to make her prima facie case. ECF No. 29 at 15.

To establish the causal link, Richardson must point to competent evidence that establishes the Med Team's knowledge of her protected activity. For example, the plaintiff in *Medina* presented evidence that the employee who terminated the plaintiff, "memorialized his decision in a handwritten note dated March 10, 1994," after having "sent a response to [the plaintiff's] complaint to the [Texas Commission on Human Rights] dated January 5, 1994." *Medina*, 238 F.3d at 684. The Fifth Circuit found this evidence "sufficient to demonstrate [the decisionmaker's] knowledge of the complaint" and thus, the plaintiff "met the causal link element of his prima facie case." *Id*. In *Manning*, to show the decisionmakers were aware of his

protected activity, the plaintiff offered "an ambiguous statement" made by an "apparent supervisor" where the plaintiff worked. 332 F.3d at 884. The Fifth Circuit found the plaintiff's conclusion that the supervisor was referring to the plaintiff's protected conduct was insufficient to "indicate that any of the decisionmakers" knew about the plaintiff's protected conduct. *Id*. As a result, the court held that the plaintiff "failed to demonstrate a causal link" between his protected activity and the employer's adverse action and thus, the plaintiff could not establish a prima facie case of retaliation. *Id*. In *Baker*, the plaintiff argued that the potential employer withdrew an employment offer in retaliation for an EEOC complaint the plaintiff "filed three years earlier." *Baker v. McHugh*, 667 F. App'x 502, 503 (5th Cir. 2016). In that case, the Fifth Circuit concluded that the plaintiff's failure to point to any evidence that the recruiter "ever knew about the three-year-old EEOC complaint when he withdrew [the plaintiff's] employment offer"—that is, plaintiff's failure to point to summary judgment evidence to establish this fact—was fatal to the plaintiff's action. *Id. See also Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, in which the Fifth Circuit found, "Plaintiffs' conclusory beliefs that Defendants are trying to put Plaintiffs out of business and are virtually shutting Plaintiffs out from any customer business of Defendants' insureds in retaliation for Plaintiffs filing a lawsuit and complaining about racial discrimination are inadequate to demonstrate a causal connection." 869 F.3d 381, 390 (5th Cir. 2017) (internal quotations omitted). In *Evans v. Houston*, the Fifth Circuit noted that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes" and, in the case before the court, temporal proximity of five days was sufficient to provide a "causal connection" that enabled the plaintiff "to satisfy the third prong of the prima facie case." 246 F.3d 344, 354 (5th Cir. 2001). In the most recent Fifth Circuit opinion to address temporal proximity, the court held "a plaintiff can meet his burden of causation simply

by showing close enough timing between his protected activity and his adverse employment action." *Garcia*, 938 F.3d at 240-41. The prima facie test in that case required the employee to show: (1) that he engaged in protected activity; (2) that the employer knew about the protected activity; and (3) retaliation because of the protected activity. 938 F.3d 240-41 (citing *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 175 n.3 (5th Cir. 2016)). The facts in *Garcia* established the company knew of his whistle blowing activities prior to firing him.[3] Thus, close proximity paired with the employer's knowledge of the protected activity is sufficient to establish a causal connection for purposes of making a prima facie case.

Richardson contends the Med Team knew about her protected activity because "the same day she complained of discrimination is the same day a decision to terminate was made." ECF No. 29 at 15; *see also id*., at 1, 2, 6, 19. Richardson further asserts Gogo testified Med Team executives searched Gogo's computer for the email prior to Richardson's termination. ECF No. 29 at 5. There is no dispute that a corporate search was made in an attempt to establish the existence of the email. However, Pembrook, Grisard, and Tzirimis, the three executives who made the decision to terminate Richardson, testified they had no knowledge of the email prior to making the termination decision. *See* ECF Nos. 26 at 18; 26-2; 26-10; 26-11. Richardson responds this testimony is in "direct conflict" with Gogo's testimony. *Id*. However, when Counsel presented a copy of the email to Gogo at her deposition, Gogo testified she didn't

---

[3] "Garcia says that beginning in 2011, Garcia reported to the company and to his supervisor that the company was billing the government for cleaning the parking lots on Job 560 when that work was not actually being performed. According to Garcia, the company ignored these reports and continued to bill the government. As a result, Garcia says he decided to report this information to the government. On April 24, 2013, Garcia e-mailed this information to the Chief Financial Officer at SourceAmerica, a nonprofit agency that helps the government administer contracts under the Javits-Wagner-O'Day Act. Garcia forwarded the e-mail to the company's General Counsel, and to SourceAmerica's General Counsel. Garcia later met in person with Robinson and had a number of telephone calls and e-mail exchanges with her." *Garcia*, 938 F.3d at 239-40.

recognize the document. *See* ECF No. 26-15 at 8-10. Gogo further testified she didn't recall receiving a copy of the email in her "Med Team e-mail in-box on January 20, 2017." *Id*. With respect to the Med Team's search for the email, Gogo testified she thought "Ryan, Chris, the CFO, and Nick" looked for the email "that week of January 18th" but could not provide a date certain. *Id*. When asked "if they found an e-mail from Ms. Richardson in which she made a complaint of race discrimination or hostile work environment," Gogo responded, "I would say no, they didn't find it." *Id*. The Med Team also testified Gogo never conveyed "any information" "relating to any complaints by Plaintiff about Mr. Garza or anyone else, prior to the decision to terminate Plaintiff's employment." *See* ECF Nos. 26-2 at 5; 26-10 at 4; 26-11 at 4.

None of the evidence makes clear how or when the decisionmakers learned of the existence of the email. Richardson's allegations, statements, and testimony are inconsistent. For example, in her Complaint, Richardson alleges two separate events. First, that she sent the email to Sarah Gogo "around January 20, 2017," and second, "two or three days later members from HR and Corporate showed up looking for Ms. Richardson with termination paperwork." ECF No. 1 at 5-6. The Complaint does not specifically allege any decisionmaker was aware of the email. In her response to the Motion, Richardson contends "[she] was terminated within the same day of sending an email to HR complaining of discrimination." ECF No. 29 at 19. Richardson's response also contends the decision to terminate her was made on the same day she complained of race discrimination. *Id*. at 1, 2, 3, 6, 15, 19. In her deposition, Richardson testified she sent the email on a Friday, was out sick the following Monday, Tuesday, and Wednesday, returned to work Thursday, and was terminated Friday. *Id*. at 295.

In response to the question "when was the decision to terminate her made?" Grisard testified, "I do not remember the exact date, but I believe it was around this time period. Q.

13

Around this time period, being the same day [the email was sent]? A. It may have been the same day, it may have been a day before or a day after." *Id.* at 58. Richardson also relies on her assertion that the January 20, 2017 email was "the only email never sent or received to not reach its destination between Sarah Gogo and Plaintiff besides one other email alleging hostile work environment" yet she does not produce, nor does she provide any other details about the email she says alleged a hostile work environment. ECF No. 29 at 14.

Accordingly, the Court finds no credible evidence the Med Team knew about Richardson's protected conduct prior to making the decision to terminate her. Richardson's subjective belief the Med Team must have known about the email before it decided to terminate her, without more, is insufficient to establish the causal link element of the prima facie case of retaliation. *See Eberle v. Gonzales*, 240 F. App'x 622, 629 (5th Cir. 2007). Speculation is also insufficient to meet the burden to show a causal connection between a protected activity and an adverse employment act. *Collins-Pearcy v. Mediterranean Shipping Co. (USA)*, 698 F. Supp. 2d 730, 764 (S.D. Tex. 2010). Thus, Richardson fails to demonstrate a causal connection between her protected conduct and her termination based upon temporal proximity paired with knowledge of the protected activity.

Richardson next attempts to bolster her temporal proximity evidence with her "exemplary" employment record, the Med Team's failure to follow its progressive discipline policy, and its failure to investigate her claim, to establish her prima facie case. ECF No. 29 at 17. *Feist v. Louisiana*, 730 F.3d 450, 455 (5th Cir. 2013) (where temporal proximity is "not close enough without other evidence of retaliation," "[s]uch evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures"). Richardson's attempt is unavailing because the evidence shows (1) the elements of

her performance that were directly related to the Med Team's reason for termination were not exemplary; (2) the Med Team's disciplinary policy allowed for discretion; and (3) the Med Team investigated her complaint.

First, with respect to Richardson's "commendable" performance, Richardson's response relies exclusively on the numerical ratings she received on her final performance review. *See* ECF No. 29 at 4-5. Richardson points to the many ratings of three or four on a scale of one to five in support of her contention that she had an excellent performance record. These ratings are under headings such as initiative, teamwork and cooperation, quality of work, quantity of work, job knowledge, professionalism, personal qualities, and supervision, among others. ECF No. 26-7 at 3. The Med Team's undisputed testimony is it fired Richardson due to the census decline, not because she lacked the qualities listed in the ratings section of the performance review. The "supervisor / appraiser" comments section in Richardson's April 8, 2016 performance appraisal note the New Braunfels low referral counts; request that Richardson identify obstacles prohibiting the Med Team from "meeting or exceeding" referral expectations; and state "increase the census" as a goal. ECF No. 26-7 at 4. In the self-assessment section of her final performance review, Richardson included a goal to increase the New Braunfels patient census by thirty to fifty "clients" by "April 1, 2017." ECF No. 26-6 at 3.

Richardson's deposition demonstrates she was aware that growth of the patient census for the New Braunfels branch was important to the overall management of the branch. ECF No. 26-13 at 8-13. Richardson's deposition also shows she was responsible for supervising all branch office personnel, including the employee whose job it was to market and recruit patient-referrals and the employees who served those patients. *Id*. Grisard testified Richardson "was responsible for managing all operations of the New Braunfels branch, including . . . managing the operations

of the branch in accordance with the fiscal parameters of the company." ECF No. 26-2 at 3; *see also* ECF No. 26-4 at 3 (Richardson's job description). And, "the revenue generated by the New Braunfels branch was directly related to the branch's patient census." *Id*. at 3-4. However, rather than growing the census, the table proffered by the Med Team illustrates the steady decline of the New Braunfels patient census from 322 in July 2015 to 244 in January 2017. ECF No. 26-2 at 4-5. In other words, during Richardson's tenure as Branch Manager, the New Braunfels patient census declined by seventy-eight patients, with a loss of forty-one patients in the nine months following Richardson's goal of increasing the census by thirty to fifty patients. ECF No. 26 at 6. Consequently, Richardson's evidence does not proffer an employment record that does not support her termination. *See Feist*, 730 F.3d at 455 ("other evidence of retaliation," "may include an employment record that does not support dismissal").

Second, as to Richardson's contention the Med Team failed to follow its progressive discipline policy, ECF No. 29 at 5, 17, 18, 20, Human Resources Manager Tia Jackson testified the Med Team's progressive discipline policy allows for discretion, "meaning that there's no specific 'you must do this, this, and this first.'" *Id*. at 40. The Med Team Employee Handbook, signed by Richardson on March 30, 2015, provides in pertinent part: "Company management, in its sole discretion, may determine the appropriate level of discipline in each situation. . . . Management, in its sole discretion, may warn, reassign, suspend, or discharge any employee 'at will,' whichever it chooses and at any time." ECF No. 28-1 at 9-10. The evidence also shows in March 2016, as part of her performance evaluation, Richardson set a goal to increase the patient census "by 30-50 clients by April 1, 2017" and was encouraged to identify and seek help to increase the New Braunfels census. ECF No. 26-6 at 3. From March 2016 to January 2017, the month of Richardson's termination, the census in her office decreased from 285 patients to 244

16

patients. ECF No. 26-2 at 4-5. Even in the absence of formal adherence to progressive discipline, the evidence shows the Med Team notified Richardson it expected her to improve the patient census at her branch and gave her time and opportunity to improve; the policy shows Med Team had discretion to determine the level of discipline in any situation; and the record presents no evidence of "typical policies and procedures" followed by the Med Team. Thus, there is no evidence of departure. *See Feist*, 730 F.3d at 455 ("other evidence of retaliation," "may include . . . an employer's departure from typical policies and procedures").

Third, with respect to failure to investigate, Richardson's statement that no investigation was made is inaccurate. ECF No. 29 at 19. Richardson testified the Med Team asked Gogo about the email and searched Gogo's computer. *Id*. at 72. The Med Team testified it searched for the email and was unable to locate it. *Id*. Gogo testified that the Med Team questioned her but she did not recall receiving the email. *Id*. at 108. Consequently, the evidence shows the Med Team initiated an investigation. That it did not investigate to Richardson's satisfaction is not evidence that supports her prima facie case.

Even though the temporal proximity between Richardson's protected activity and her termination is very close, without knowledge of Richardson's protected activity, the Med Team could not have retaliated against her. Ultimately, Richardson's unsupported conclusion—due to the close temporal proximity of the email and her termination, the Med Team must have known about her protected conduct before they decided to fire her—is insufficient to state a prima facie case.

**IV. Conclusion**

In responding to the Med Team's Motion for Summary Judgment, Richardson failed to point to sufficient evidence to make a prima facie case establishing the Med Team discriminated

or retaliated against her based on her race. Consequently, summary judgment is appropriate.

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 26). Plaintiff Renee Richardson takes nothing as to her claims against The Medical Team, Inc. d/b/a The Med Team, Inc. It is further ORDERED all pending motions are DENIED AS MOOT. The Clerk SHALL CLOSE the case following entry of the Final Judgment.

It is so ORDERED.

SIGNED this 25th day of November 2019.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE